BOROUGH OF DEMAREST, PLAINTIFF, v. STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided February 25, 1977.

*Mr. John A. Schepisi,* for plaintiff (*Messrs. Breslin* and *Schepisi,* attorneys).

*Mr. William F. Hyland,* Attorney General, for defendant (*Mr. Peter J. Herzberg,* Deputy Attorney General, appearing).

GELMAN, J. S. C. Plaintiff seeks a declaratory judgment that the Department of Environmental Protection and the

State House Commission (DEP) do not have jurisdiction over certain non-Green Acres lands owned by the Borough of Demarest.

Demarest has 189 acres of borough-owned parklands of which 27 acres were purchased with Green Acres funds pursuant to grant contracts entered into between Demarest and the DEP. It intends to lease 78 acres of parklands to the Demarest Nature Center Association. None of the acreage to be leased was acquired with Green Acres funds, although some of it was existing parkland at the time of the grants.

As to this proposed lease, the DEP states that its approval is not required because the lease does not constitute diversion to a use for other than recreation and conservation in view of the Nature Center's consistent practice to open its lands to the general public for conservation purposes. Nevertheless, the borough seeks a declaratory judgment from this court as to whether, in the future, it must seek approval of the DEP prior to diversion of parklands which were in existence at the time of Demarest's two Green Acres grants.

Demarest acquired lands for recreation and conservation under the New Jersey Green Acres Land Acquisition Act of 1971, *N. J. S. A.* 13:8A–19 *et seq.* The purpose of this act was to expand and preserve recreation and conservation areas within the State. There were specific legislative findings incorporated into the act as to the need to protect such lands for the use of existing as well as future generations. *N. J. S. A.* 13:8A–20 (a), (b), (c), (d). Under the act, municipalities could apply to the DEP for Green Acres funds to assist them in purchasing lands which would be dedicated as parklands. *N. J. S. A.* 13:8A–26 *et seq.*

Pursuant to these provisions the Borough of Demarest contracted with the DEP on May 28, 1974 for $171,000, and on December 27, 1974 for $90,725,000, these sums representing 50% of the purchase price of the borough-acquired lands. The DEP used its standard form for these contracts which contained a provision that the

LOCAL UNIT shall not dispose of or divert to another use any lands now used for recreation or conservation without the approval of the Commissioner of the Department of Environmental Protection and the State House Commission as provided by *N. J. S. A.* 13:8A–13 (a).

According to the affidavit of Howard Wolf, chief of the Green Acres Local Grant Program of the DEP, such a provision was included in every local grant contract since the inception of the Green Acres program in 1961. Nevertheless, Demarest argues that the DEP lacked legislative authorization to include such a provision in its grant contracts and that, contrary to the plain language of the agreement, the borough is therefore not required to obtain DEP approval for diversion of non-Green Acres lands which were existing parklands at the time of the Green Acres grants. In support of its position, Demarest urges that *N. J. S. A.* 13:8A–13 (a), the provision cited in the contract, requires DEP approval only for diversion of lands acquired by a local unit with the aid of a Green Acres grant. Further, the borough points out that a 1975 amendment to the Green Acres Act specifically provides that a local unit must receive approval of the DEP prior to diversion of any recreation and conservation lands held by the unit at the time of the grant. *N. J. S. A.* 13:8A–47(b). Thus, the borough concludes, it was only with the 1975 amendment that the jurisdiction of the DEP was extended to such non-Green Acres lands.

 In view of the consistent practice of the DEP to include in its contracts with local units a restriction against diversion of any existing parklands, the 1975 amendment must be viewed as a statutory clarification of the original legislative intent. Indeed, it makes little sense to construe the jurisdiction of the DEP as not including the power to control diversion of existing parklands. The Green Acres Act provided that the local unit must submit to the Commissioner a recreation and conservation plan and that the Commissioner could prescribe the terms and conditions under

which a grant would be made.[1] *N. J. S. A.* 13:8A–43 (a), (b). The Commissioner was directed to

* * * Seek to achieve a reasonable balance among all areas of the State in consideration of the relative adequacy of area recreation and conversation facilities at the time and the relative anticipated future needs for additional recreation and conservation facilities. * * * [*N. J. S. A.* 13:8A–39(a).]

This directive could be entirely frustrated by plaintiff's interpretation of the statute. For under Demarest's interpretation, a municipality would be free to accept DEP money for 50% of the purchase price of recreation lands and thereafter sell off existing parkland and retain the full proceeds for its own purposes. Under no circumstances can the Green Acres legislation be construed so as to enable local municipalities to enrich their own coffers at the expense of the State Treasury.

Demarest freely and advisedly negotiated the two contracts which now bind them. The remedy for a local unit which wishes to release itself from its contractual obligations under a Green Acres contract is provided in the act: to pay into the State Recreation and Conservation Land Acquisition Fund or into the State Treasury 50% of the value of the land acquired through the DEP. *N. J. S. A.* 13:8A–47 (a). Thus, until Demarest repays the State 50% of the present value of the 27 acres it acquired with Green Acres funds it is bound by the plain language of its contracts. A judgment will be entered that under these two contracts the Borough of Demarest must obtain DEP approval prior to the diversion of any recreation and conservation lands which were in existence at the time of the grants.

---

[1] This directive is identical to the one contained in the original Green Acres legislation. *L.* 1961, c. 45, § 5.