LASSER, P.J.T.C.
Taxpayer contests deficiency tax assessments, interest and penalties imposed by the Director of the Division of Taxation (Director) with regard to taxpayer’s 1986 and 1987 corporation business tax (CBT) returns. The deficiency assessments result from the Director’s modification of the allocation factor used by taxpayer to calculate the portion of its income attributable to New Jersey under the New Jersey Corporation Business Tax Act (CBT Act), N.J.S.A. 54:10A-1 et seq.[1] The Director’s allocation differed from taxpayer’s in that the Director included leased real and tangible personal property in addition to property owned by taxpayer, as provided by N.J.A.C. 18:7-8.5(b) and (c).
Taxpayer challenges the validity of the Director’s regulation and imposition of the deficiency assessments in accordance with that regulation. For tax year 1986, a deficiency assessment was imposed in the amount of $29,756, together with penalties of $1,488 and interest of $11,268. For tax year 1987, a deficiency assessment was imposed in the amount of $30,826, together with penalties of $1,542 and interest of $15,387.
Cross motions for summary judgment have been filed. The parties rely on the facts set forth in the pleadings and briefs, and the facts recounted in this opinion are uncontroverted on the record.
Taxpayer is a Delaware corporation with its principal office in Skokie, Illinois. During the tax years in issue, taxpayer transacted business in over 40 states, including New Jersey, and is subject to the New Jersey CBT Act. Taxpayer engaged in the manufacture and sale of recreational products and services in the defense, aerospace and industrial fields. Its Mercury Marine Division maintained a warehouse with inventory in New Jersey, and it operated six bowling centers in New Jersey. During the tax years in issue, taxpayer owned and leased real *533 property and tangible personal property located in New Jersey and other states.
The CBT Act imposes a franchise tax on corporations based on the corporation’s net income.[2] N.J.S.A. 54:10A-5 (§ 5). In the case of corporations maintaining a regular place of business outside the state, the tax is based on the percentage of net income properly attributed to New Jersey. N.J.S.A. 54:10A-6 (§ 6).
The percentage of net income properly attributed to New Jersey is expressed as an allocation factor. Ibid. The allocation factor is derived by averaging three ratios, which ratios reflect the proportion of the corporation’s overall (1) real and tangible personal property, (2) receipts, and (3) payroll within the State. Ibid. At issue in this case is the proper computation of one of the ratios-’making up the allocation factor, namely, the property ratio, which is defined in the statute as follows:
The average value of the taxpayer’s real and tangible personal property within the State during the period covered by its report divided by the average value of all taxpayer’s real and tangible personal property wherever situated during such period____ [N.J.S.A. 54:10A-6(A)]
From the inception of the CBT Act in 1945 and until 1986, the Director only considered property owned by the taxpayer in the calculation of the property ratio.[3] Effective July 21, 1986, the Director revised the regulation, and it now states that property “owned, leased, rented or used by the taxpayer” is to be *534 included in the computation of the ratio at issue. N.J.A.C. 18:7-8.5(b).
Schedule K of taxpayer’s 1986 CBT return reflected a business allocation factor computed as follows:
[[Image here]]
*535 Following an audit of the 1986 and 1987 tax returns, the Director revised taxpayer’s property ratio of the allocation formula to include in the numerator and denominator the value of taxpayer’s rental property as required by N.J.A.C. 18:7-8.5(b) and (c), as follows:
[[Image here]]
The adjustments by the Director resulted in the following increases in taxpayer’s property ratios.
[[Image here]]
The adjustments by the Director resulted in the following increases in taxpayer’s allocation factors.
*536 [[Image here]]
II.
The Director relies on two provisions of the CBT Act, §§ 8 and 27, for his authority to promulgate the regulation at issue. N.J.S.A. 54.-10A-27 (§ 27) provides:
The [Director] shall prescribe and issue such rules and regulations, not inconsistent herewith, for the interpretation and application of the provisions of this act, as he may deem necessary.
N.J.S.A. 54:10A-8 (§ 8) provides:
If it shall appear to the [Director] that an allocation factor determined pursuant to [N.J.S.A. 54:10A-6] does not properly reflect the activity, business, receipts, capital, entire net worth or entire net income of a taxpayer reasonably attributable to the State, he may adjust it by:
(a) excluding one or more of the factors therein;
(b) including one or more other factors, such as expenses, purchases, contract values (minus subcontract values);
(c) excluding one or more assets in computing entire net worth; or
(d) excluding one or more assets in computing an allocation percentage; or
(e) applying any other similar or different method calculated to effect a fair and proper allocation of the entire net income and the entire net worth reasonably attributable to the State.
The Director argues that current commercial practice is more accurately reflected by including leased property in the § 6(A) ratio. Taxpayer does not dispute this contention.
Taxpayer does not contend that the subject regulation is procedurally defective, conceding that the Director has complied with the Administrative Procedure Act. Taxpayer concedes that the substantive changes made in the subject regulation would be permissible had § 6(A) been amended by the Legislature. Rather, taxpayer contends that the Director exceeded his statutory authority by promulgating a regulation inconsistent with § 6(A), in violation of the standard set forth in § 27. Alternatively, taxpayer contends that the statutory provisions enabling the Director to promulgate the regulation at *537 issue constitute an unlawful delegation of legislative authority in violation of Article III, paragraph 1 of the New Jersey Constitution (1947).
Taxpayer contends that § 8 may not be relied on by the Director because the promulgation of the subject regulation was not an exercise of the Director’s § 8 discretion to except a taxpayer or class of taxpayers from the § 6 allocation formula, but rather was a direct revision of the § 6 formula.
Taxpayer contends that the challenged regulation is inconsistent with § 6(A) because the Legislature intended to limit the meaning of “taxpayer’s property” to property owned by the taxpayer. This intent, taxpayer claims, can be inferred from: (1) the genesis of the CBT Act,[4] (2) nearly 40 years of implementation by the Director so limiting the meaning of the § 6(A) language, and (3) the Legislature’s failure to enact statutory amendments that would have accomplished the same end as the new regulation.[5]
III.
A court must consider many factors to determine legislative intent, including the language used in the statute, the policy underlying the statute, and the legislative history. Serraino v. Mar-D, Inc., 228 N.J.Super. 482, 486, 550 A.2d 178 (Law Div.1988). See also Coletti v. Union County Board of Chosen Freeholders, 217 N.J.Super. 31, 524 A.2d 1270 (App. *538 Div.1987); Cedar Cove v. Stanzione, 233 N.J.Super. 336, 558 A.2d 1351 (App.Div.1989); Shapiro v. Essex County Freeholders Board, 177 N.J.Super. 87, 424 A.2d 1203 (Law Div.1980), aff’d 183 N.J.Super. 24, 443 A.2d 219 (App.Div.1982), aff 'd 91 N.J. 430, 453 A.2d 158 (1982). “[S]tatutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as ‘consonant to reason and good discretion.’ ” Cedar Cove, 233 N.J.Super. at 340-341, 558 A.2d 1351 (quoting Schierstead v. Brigantine, 29 N.J. 220, 230, 148 A.2d 591 (1959); citations omitted). Moreover, the specific provisions of the CBT Act “must be read together as a unitary and harmonious whole.” American Tel. & Tel. Co. v. Director, Div. of Taxation, 4 N.J.Tax 638, 648 (Tax Ct.1982), aff’d and mod. 194 N.J.Super. 168, 476 A.2d 800 (App.Div.), certif. den. 97 N.J. 627, 483 A.2d 157 (1984).
A.

The Plain Language of the Statute.

When construing a statute, the common ordinary meaning of words controls. International Business Machine Corp. v. State, 141 N.J.Super. 79, 84, 357 A.2d 292 (App.Div.1976).
The plain language of § 6(A) does not support taxpayer’s interpretation. The wording of the statute, “the taxpayer’s real and tangible personal property,” is not synonymous with real and tangible personal property owned by the taxpayer, which is the gloss proffered by taxpayer. The words “real” and “tangible personal,” which qualify the word “property” seem clearly intended to exclude intangibles from the scope of the section. Inclusion in, or exclusion from, the scope of the section is on the basis of what kind of item the property is, and not on the basis of what form the taxpayer’s control over the property takes.
Taxpayer’s response to the Director’s argument that the wording of the statute does not limit the property to owned property is that, at best, the phrase “taxpayer’s property” is a *539 neutral phrase. I agree that the phrase is neutral and allows flexibility of interpretation.
B.

Policy Considerations.

An analysis of the policy underlying the statute does not support taxpayer’s interpretation. The purpose of an allocation factor is to determine fairly what percentage of the value of a multi-state corporation is generated in-state. Container Corporation of America v. Franchise Tax Board, 468 US. 159, 183, 103 S.Ct. 2933, 2949, 77 L.Ed.2d 545 (1983); Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 328, 478 A.2d 742 (1984). A related purpose is to reflect fairly the benefits and opportunities afforded the multi-state corporation by the state. 1 Hellerstein, State Taxation (1983) at 333; General Motors Corp. v. District of Columbia, 380 U.S. 553, 561, 85 S.Ct. 1156, 1161, 14 L.Ed.2d 68 (1965).
N.J.S.A. 54:10A-6 embodies the so-called “Massachusetts formula,” using the three elements of property, receipts and payroll. The rationale for these elements is relatively straightforward, that capital and labor create the corporation’s wealth, and receipts (or sales) represent the conversion of that wealth to income. Cox, “The NCCUSL Uniform Apportionment Formula,” 1964 Taxes 530, 532-534. In the case of property and payroll, the state provides a situs for the wealth-creating aspects of the multi-state corporation. In the case of receipts, the state provides a market for the corporation’s output. Id. at 533.
At least two rationales support the use of the corporation’s property to reflect the benefits obtained and value generated instate: that the property factor reflects (1) the capital invested in-state by the corporation, or (2) the corporation’s use of capital located within the State. Ibid.; Sumerwell, “State Allocation Factors; The Property Factor,” 7 Tax Executive 30 (1955). The weight given by a state to one or the other of these rationales would affect the scope of the property factor {e.g., *540 whether to include rental property) and the valuation of property (e.g., to use book value, market value, or some other method). Cox, op. cit., supra, at 533; Sumerwell at 30. Also, the degree to which all the elements of an allocation formula are specified by statute may vary from state to state. See Conlon, “The Apportionment of Multistate Business Income: The NCCUSL Uniform Division of Income Act,” 12 Tax Executive 220, 221-222 (1960).
N.J.S.A. 54:10A-6(A) does not indicate whether the Legislature intended to adopt either or both the “capital invested” or “capital used” rationales. However, § 6 can be read in pari materia with other sections of the CBT Act. In American Telephone & Telegraph Co., supra, Judge Crabtree considered whether the receipts fraction of the CBT Act’s allocation factor should include gains from the sale of tangible and intangible property not in the ordinary course of business. 4 N.J.Tax at 648. Judge Crabtree reasoned that such gains should be included in the allocation factor because such gains are included in the definition of net income under the CBT Act, stating, “the tax base and the receipts fraction are symmetrical. That which is excluded from the former is excluded from the latter, and, conversely, that which is included in the former is also included in the latter.” Ibid.
The Appellate Division upheld Judge Crabtree’s ruling on this issue. The sample tax return that accompanied the commission report[6] (which report underlay the enactment of the CBT Act) could have been read to exclude the gains in the AT & T case from the receipts fraction. However, the Appellate Division found Judge Crabtree’s interpretation was justified, given the 1958 amendment to the CBT Act that established the net income base, particularly given the fact that the initial legislative history gave “no clear indication of the draftsman’s intent.” 194 N.J.Super. at 176-177, 476 A.2d 800.
*541 The CBT Act extends to “[e]very domestic or foreign corporation which is not ... exempted ... for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.” N.J.S.A. 54:10A-2; emphasis supplied. Clearly, the Legislature intended to tax corporations that own or employ capital in the state. See Roadway Express, Inc. v. Director, Div. of Taxation, 50 N.J. 471, 483, 236 A.2d 577 (1967), app. dism. 390 US. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968); Avco Financial Services Consumer Discount Co. One, Inc. v. Director, Div. of Taxation, 100 N.J. 27, 39, 494 A.2d 788 (1985).
Furthermore, the amount of tax is now based on the corporation’s net income. The definition of “entire net income” specifically includes “the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or conversion of capital assets.” N.J.S.A. 54:10A-4(k); emphasis supplied. Thus, the source of the tax base is employment of both owned and leased capital.
The taxing of corporations for the privilege of using or investing capital in-state, while at the same time mandating that apportionment of income be based solely on capital invested and excluding capital used, would seem to conflict with the purpose of the allocation factor, namely, to reflect fairly the corporation’s in-state activities in order to tax them. A more reasonable inference is that the Legislature intended to grant to the Director discretion as to how the property ratio should be computed, in order to reflect the change from net worth to net income and the legislative directive to tax income measured by capital employed.
This inference is confirmed by an examination of § 8, as interpreted by the Court in Metromedia, Inc. v. Director, Div. of Taxation, supra. In Metromedia, the Director had adjusted the receipts ratio of a broadcaster by multiplying the total receipts of each of the broadcaster’s stations reaching New Jersey by the percentage of that station’s audience residing in *542 New Jersey. The Court held that use of the “audience factor” to compute the taxpayer’s allocation factor fell within the Director’s .discretion. Going further, the Court stated:
Clearly, the language of the statute vests broad authority in the Director to determine what income-producing activity of the taxpayer is reasonably referable to its business in New Jersey, so that this income can appropriately be used in the measure of the franchise tax. The statutory scheme recognizes that this is a highly specialized decision that entails considerable discretion. The Director’s discretion is bound by standards of "sound accounting principles.” It is nonetheless as broad as necessary to enable the Director to determine the fair value of the taxpayer’s net worth, as well as the percentage of net worth and net income that can be attributed to New Jersey. [97 N.J. at 324, 478 A.2d 742 citations omitted]
However, the Court did not uphold the assessment in Metromedia because the Court found that the Director’s action constituted rule-making, in violation of the Administrative Procedure Act. The Director’s action was held to be rule-making because of its “general applicability” and because it was “prospective in nature” and was “intended to have continuing effect.” Id. at 334, 478 A.2d 742.
In the instant case, the Director followed the directive of Metromedia and complied with the requirements of the Administrative Procedure Act.
Taxpayer seeks to distinguish Metromedia, essentially by limiting its applicability to the facts in that case. Specifically, taxpayer notes that broadcasting is a specialized industry and that in Metromedia there would have been little or no receipts allocation in the absence of the Director’s action.
Taxpayer’s view is that “recourse to § 8 by either the Director or the taxpayer is permissible only in those exceptional and unusual circumstances neither contemplated nor otherwise addressed by the Legislature.” In support of this position, taxpayer cites F. W. Woolworth v. Director, Div. of Taxation, 45 N.J. 466, 213 A.2d 1 (1965), S.M.Z. Corp. v. Director, Div. of Taxation, 193 N.J.Super. 305, 473 A.2d 982 (App.Div.1984), Hess Realty Corp. v. Director, Div. of Taxation, 10 N.J.Tax 63 (Tax Ct.1988) and the Director’s regulations.
*543 In F. W. Woolworth, the Court quoted the 1945 report: “[i]n order to prevent unfair or even unconstitutional results in given cases, the rigidity of the allocation formulas is relieved by a provision authorizing the tax director to adjust the amount of allocable net worth upon the showing of an inequitable result under the formula.” 45 N.J. at 498, 213 A.2d 1.
In S.M.Z., the Appellate Division stated that “[i]t is undeniably clear that our Legislature enacted § 8 to serve as a ‘safety valve’ in cases where the ‘allocation factor’ determined under Section 6 may produce an unconstitutional [or unfair] result.” 193 N.J.Super. at 327, 473 A.2d 982.
In Hess Realty, the taxpayer challenged a § 8 adjustment by the Director on the ground that the result was unfair. The case did not deal with the scope of the Director’s authority but, rather, with the nature of the adjustment made by the Director.
None of these cases requires, as taxpayer suggests, “exceptional and unusual circumstances” to trigger the Director’s § 8 authority, but, rather, that a failure to exercise that authority would produce an unfair result. F.W. Woolworth, 45 N.J. at 497, 213 A.2d 1.
Taxpayer also cites N.J.A.C. 18:7-10.1(a), the regulation dealing with the Director’s § 8 authority. This regulation, in § 10.1(a), gives a general statement of the purpose of § 8, restates statutory language in § 10.1(b) and provides procedures in § 10.1(c). The essence of the regulation is that the Director has discretion to adjust the business allocation factor to accurately reflect business activity in New Jersey when § 6 does not properly reflect this activity. This regulation is not inconsistent with the scope of authority of the Director defined in Metromedia.
Finally, the language and reasoning of Metromedia support the exercise of the Director’s § 8 discretion in this instance. Metromedia does not limit to specialized industries the Director’s discretion to adjust allocation factors. Metromedia instructs the Director to promulgate rules if the exercise of his § 8 discretion will invoke his quasi -legislative power to pro *544 spectively obligate taxpayers generally. This he has done. Whether the affected class of taxpayers is relatively small, as in the case of broadcasters, or relatively large, which is presumably the case when considering the class of corporate taxpayers who use leased real and tangible personal property, the determination of whether the Director has overstepped his authority hinges on whether the resulting allocation is fairer than it would have been without the § 8 adjustment. Taxpayer concedes that the exclusion of rental property from the allocation formula “is manifestly not in accordance with modern commercial practice.” Thus, taxpayer concedes that the inclusion of rental property would result in a more accurate, and therefore fairer, allocation of income to New Jersey.
C.

Legislative History.

Taxpayer’s most strenuous arguments for its position focus on the legislative history of the CBT Act.
Taxpayer points out that the CBT Act originally utilized only a net worth tax base. Taxpayer argues that the property allocation factor based on owned property and excluding rental property is more appropriate where net worth alone is the measure of the tax because such an allocation factor more accurately reflects the corporation’s New Jersey capital investment. Consonant with this reasoning, taxpayer points out that the sample tax return appended to the 1945 report includes in the property allocation factor only property owned by the taxpayer. Taxpayer argues that these facts evidence the Legislature’s intent when enacting the CBT Act to exclude rental property from the property allocation factor.
The fact that the sample tax return of the 1945 report did not include rental property (because the sample tax return included only balance sheet items and rental property is not a balance sheet item) does not indicate that the legislative intent was to exclude rental property regardless of changes in the tax base. More plausibly, the sample tax return reflects the intent of the *545 Legislature and the Commission on Taxation of Intangible Personal Property to maintain a “symmetrical” relationship between the tax base and the scope of the allocation factor. See American Tel. & Tel. Co., supra, 4 N.J.Tax at 648.
In addition, taxpayer points out that the relevant language of § 6 has remained unchanged since the CBT Act’s inception, notwithstanding the Legislature’s opportunity to amend that language.[7] Indeed, taxpayer argues, the Legislature was presented with a recommendation to alter the relevant language of the statute and failed to do so.
The fact that the Legislature has not amended, in any relevant respect, the property allocation factor in § 6 since the CBT Act’s inception does not, in and of itself, indicate any initial or continuing insistence on the part of the Legislature that the Director’s prior interpretation of § 6 be continued forever. See Romeo v. Romeo, 84 N.J. 289, 294, 418 A.2d 258 (1980) (legislative inaction is “not dispositive” in determining the intent expressed in a statute); Airwork Service Division v. Director, Div. of Taxation, 97 N.J. 290, 295, 478 A.2d 729 (1984) (“In general, the legislative attitude towards enacted legislation is a marginal tool of interpretation, even under the most propitious circumstances”); Amerada Hess Corp. v. Director, Div. of Taxation, 107 N.J. 307, 322-323, 526 A.2d 1029 (1987) (legislative inaction is a “weak reed upon which to lean” and a “poor beacon to follow” in construing a statute, and “vindication by [legislative] inaction is a canard.”) Legislative inaction is equally compatible with a continuing faith in the Director’s expertise and discretion to administer the allocation factor in a fair manner.
Likewise, the failure of the Legislature to adopt the recommendations of the 1972 report more plausibly reflects an unwillingness to hamper the Director’s discretion than an intention to continue to use an increasingly inaccurate method of apportion *546 ing income.[8] The net income base of the CBT was adopted in 1958, but the net worth base continued to comprise a portion of the tax base until 1986, when the regulations at issue took effect. In contrast, the Corporation Income Tax Act (N.J.S.A. 54:10E-1 et seq.), which does explicitly include rental property in its allocation factor, has from its 1972 inception never included a net worth measure.
Taxpayer argues that other states have interpreted the relevant statutory language to exclude rental property. See International Harvester Co. v. Evatt, 329 U.S. 416, 419, 67 S.Ct. 444, 445, 91 L.Ed. 390 (1947) (reference to Ohio law); Western Contracting Corp. v. State Tax Commission, 18 Utah 2d 23, 414 P.2d 579, 587 (1966). The cases cited by taxpayer do not address the issue of the extent of a tax administrator’s discretion to interpret the relevant statutory language, and are thus inapposite.
Taxpayer has provided a copy of a 1949 memorandum from the deputy commissioner of the State of New York Department of Taxation and Finance to then New York Governor Dewey stating the department’s conclusion that the New York law does not allow the tax administrator to include rental property in its property ratio. For two reasons, this memorandum provides little weight to taxpayer’s argument. First, the memorandum is dated 1949, whereas the CBT Act was enacted in 1945. While New Jersey courts assume that the Legislature adopts a sister state’s construction of a statute when adopting that state’s statutory language, that assumption extends only to constructions that have been rendered as of the date of adoption. See Van Horn v. William Blanchard Co., 88 N.J. 91, 97, 438 A.2d 552 (1981). Second, the assumption generally extends to decisions of the highest court of the parent jurisdiction. Ibid. There is no indication that the New York Court of *547 Appeals would have agreed with the deputy commissioner of the administrative agency.
Finally, taxpayer argues that the Director disregarded rental property for almost 40 years and that the consistency of this position evidences a recognition that N.J.S.A. 54:10A-6(A) excludes rental property.
The Director’s prior exclusion of rental property from the § 6 allocation formula does not constitute a bar to the Director’s authority to interpret the statute anew in light of changing economic conditions and changes in the CBT Act’s emphasis. Taxpayer cites Motor Finance Corp. v. Director, Div. of Taxation, 129 N.J.Super. 19, 24, 322 A.2d 180 (App.Div.1974), certif. den. 66 N.J. 319, 381 A.2d 19 (1974), for the proposition that an administrative construction of long standing is evidential of legislative intent. However,
the court will consider this factor only when it is not satisfied that the Legislature’s intent cannot otherwise be determined by a critical examination of the purposes, policies and language of the enactment. When such circumstances point strongly to the imputation of a particular legislative intent, they may not be outweighed or overcome simply by a countervailing administrative practice. [Airwork Service Division v. Director, Div. of Taxation, 97 N.J. 290, 296, 478 A.2d 729 (1984)].
Taxpayer’s arguments here do not contradict the notion that the Legislature intended to allow the Director discretion to interpret the relevant statutory language in light of changing economic conditions and changes in the scheme of the CBT Act as a whole. Taxpayer’s arguments hinge on the premise that the Legislature intended to specify the elements of the allocation formula to such a degree as to forbid the discretion exercised by the Director in promulgating the regulations at issue. However, I have found that the phrase “taxpayer’s property” is neutral as to whether the allocation factor includes or excludes rental property. The CBT Act, in its property and income based form, is a broad-based franchise tax, the reach and measure of which is determined by the corporate taxpayer’s use of property, as well as the corporation’s ownership of property. I find that it is the intent of the Legislature to delegate to the Director the authority, as broad as is necessary, *548 to fairly determine a taxpayer's allocation of income to New Jersey, and that the inclusion of leased property in the property fraction of the allocation formula is within this authority of the Director.
IV.
Finally, taxpayer argues that to the extent that §§ 8 and 27 enable the Director to modify the method of computing the property ratio of § 6, they effect an unlawful delegation of legislative authority in violation of Article III, paragraph 1 of the New Jersey Constitution. This argument is without merit.
“A legislative body ‘... is free to delegate legislative authority provided it has exercised ‘the essentials of the legislative function’ — of determining the basic legislative policy and formulating a rule of conduct.’ ” Pascucci v. Vagott, 71 N.J. 40, 49, 362 A.2d 566 (1976); quotations omitted. The basic legislative policy embodied in § 6 is the fair allocation of income to New Jersey. See part III B, supra. The standard by which to measure the Director’s actions is spelled out in § 27, that is, they must not be inconsistent with the terms of the statute. The Director’s § 8 authority is bound by standards of “sound accounting principles.” R.H. Macy & Co., Inc. v. Director, Div. of Taxation, 77 N.J.Super. 155, 164, 185 A.2d 682 (App.Div. 1962), aff’d o.b. 41 N.J. 3, 194 A.2d 457 (1963); Metromedia, supra, 97 N.J. at 324, 478 A.2d 742. Such standards are adequate to guide the Director in the exercise of his delegated power, and thus the CBT Act does not effect an unconstitutional delegation of legislative authority. New Jersey Bell Telephone Co. v. Communications Workers, etc., 5 N.J. 354, 370, 75 A.2d 721 (1950).
For the foregoing reasons, taxpayer’s summary judgment motion is denied and summary judgment is granted to the Director. The Clerk of the Tax Court is directed to enter judgment dismissing taxpayer’s complaint.

 L.1945, c. 162.

 The CBT Act, enacted in 1945, imposes a franchise tax on all non-exempt corporations doing business in New Jersey. The amount of the tax was originally based on the corporation’s net worth. In 1958, the CBT Act was amended to include net income as an additional base on which to determine the tax due. ¿.1958, c. 63. Under this scheme, the tax is calculated by adding (1) apportioned net worth times a tax rate and (2) apportioned net income times a tax rate. In 1982, the CBT Act was amended to phase out the net worth base. Beginning with the year 1986, the CBT no longer contained a net worth component. ¿.1982, c. 55.

 The Director has only published formal allocation formula regulations since 1959, and the regulations in effect from 1959 to 1986 only considered property owned by a taxpayer.

 The particular statutory language at issue was apparently adopted from a New York statute. N.Y.Laws 1944, c. 415. New York later amended its statute to include rented real property, N.Y.Laws 1949, c. 848, and rented tangible personal property. N.Y.Laws 1987, c. 817.

 In 1972, the CBT Act and other taxation statutes directed at business were reviewed by the New Jersey Tax Policy Committee. One recommendation advanced by the committee was to amend the allocation provisions of the CBT Act to include leased property. Report of the New Jersey Tax Policy Committee, "Non-Property Taxes on a Fair and Equitable Tax System," Part V at 26 (Feb. 23, 1972) (“the 1972 report"). Instead, the Legislature incorporated this modification into the Corporation Income Tax Act, L.1973, c. 170, and retained the original language of the CBT Act.

 Report of Commission on Taxation of Intangible Personal Property (N.J.1945) ("the 1945 report”).

 Taxpayer points out that § 6 has been amended by the Legislature on eight occasions without altering the language at issue here.

 The 1972 report, see n. 5 supra, cites the distortions created in the allocation formula because of its failure to account for modern financing arrangements, e.g., sale and leaseback transactions.