ANTHONY ADAMO, PLAINTIFF-RESPONDENT, v. LLOYD W.
McCORKLE, ACTING PRINCIPAL KEEPER OF THE
NEW JERSEY STATE PRISON AT TRENTON, DEFEND-
ANT-APPELLANT.

Argued November 2, 1953—Decided November 23, 1953.

*Mr. Paul T. Huckin,* Deputy Attorney-General, argued the cause for the appellant (*Mr. Harry L. Towe,* Deputy Attorney-General of New Jersey, Acting Prosecutor of Bergen County, Attorney).

*Mr. Dominick F. Pachella* argued the cause for the respondent (*Messrs. Pachella and Chary,* attorneys).

The opinion of the court was delivered by

JACOBS, J.  The Appellate Division, by a divided vote, reversed the Law Division's order discharging the writ of *habeas corpus* which the plaintiff Anthony Adamo had obtained.  The appeal to this court was duly taken under *Rule* 1:2–1(*b*)—(now *R. R.* 1:2–1(*b*)).

On January 23 and 24, 1950 Anthony Adamo was tried on two indictments for assault.  The jury found him guilty as charged in both indictments and on February 8, 1950 the State moved for sentence.  At that time the trial court made the following pronouncement:

"It is the judgment of this court that this defendant be put on probation for a period of five years.  He is to report once a week to the Probation Officer of this County, the time and place to be fixed by the Probation Office.  He is to obey all the rules of the Probation Office which generally speaking means that he is to observe the law of this State, of the United States, and of any State where he may be permitted to go.  He is not to leave the State of New Jersey without the permission of either the Probation Officer or the Judge of the Court.  In addition to this he will be fined $500.00.  This fine may be paid in installments."

On May 16, 1952 Adamo was charged with violation of his probation.  Prior to that date the $500 fine had been paid.

Hearings on the charge of violation of probation were held and on August 13, 1952 there was a finding of guilty, the probation was revoked and Adamo was remanded to the Bergen County jail to await sentence. On August 20, 1952 he was sentenced to concurrent terms of not less than two nor more than three years in State Prison.

Thereafter Adamo obtained a writ of *habeas corpus*, contending that the fine was the original sentence imposed upon him, that payment executed the sentence, and that the court lacked power to impose the later prison sentence. The writ was discharged in the Law Division. On his appeal to the Appellate Division a majority of the court held that since the judgment of probation was not preceded by an express declaration that imposition of sentence was being suspended, it was void, thus leaving the fine as the valid and fully executed sentence. Judge Francis, dissenting, found that the judgment of probation for five years necessarily meant that the imposition of sentence was being suspended and there was no need for any further formal expression to that effect; he considered that the fine was simply one of the several conditions of probation and that its payment in nowise altered or terminated Adamo's clear obligation to comply with all other terms of the probation. We are in full agreement with the position taken by Judge Francis.

Probation is well recognized as an important device in our criminal jurisprudence. It is designed to aid both society and the offender by affording opportunity for correction and reform under suitable supervision. The main hope is that during the period of probation the violator will establish himself as a law-abiding and useful member of the public and thus avoid the need for actual confinement and its adverse consequences. Although the matter is comprehensively dealt with in our present Probation Act (*R. S.* 2:199–1 *et seq.*— now *N. J. S.* 2A:168–1 *et seq.*) there are common law and statutory antecedents in our State which are worthy of mention. See *Murphy and McLoughlin, Probation and its Present Status with Special Reference to New Jersey,* 5 *John Marshall L. J.* 69 (1935) ; *Webster, The Evolution of Proba-*

*tion in American Law*, 1 *Buffalo L. Rev.* 249 (1952); *Grinnell, The Common Law History of Probation*, 32 *J. Crim. L. & Criminology* 15 (1941).

■ Notwithstanding the doubts which may be expressed as to its basis in English common law, there is little question that the practice of suspending sentence during good behavior long antedated statutory authority in our State and elsewhere. See *Ex Parte United States*, 242 *U. S.* 27, 47, 37 *S. Ct.* 72, 61 *L. Ed.* 129, 142 (1916); *Murphy, supra,* at *p.* 88; *Grinnell, supra,* at *p.* 21; *Note, Suspension of Sentence*, 30 *Harv. L. Rev.* 369 (1917). Thus, there are records of the suspension of sentence at least as early as 1846 in Passaic County, 1862 in Union County, 1868 in Hudson County and 1874 in Essex County. See *Murphy, supra,* at *p.* 90. By 1881 the practice was sufficiently established and widespread to call forth the comment by Justice Dixon that the suspension of sentence "in criminal cases has long been in vogue in this as well as other states." *State v. Addy*, 43 *N. J. L.* 113, 114 (*Sup. Ct.* 1881). See *State v. Osborne*, 79 *N. J. Eq.* 430, 442 (*Ch.* 1911); *In re Baer*, 140 *N. J. Eq.* 571, 573 (*E. & A.* 1947). In the *Addy* case the defendant was convicted upon an indictment for maintaining a nuisance by obstructing a culvert over a water-course so that a highway was overflowed. The court ordered that sentence be suspended on payment of the costs of prosecution, so long as the defendant shall keep the culvert unobstructed and abate the nuisance. Thereupon the defendant paid the costs and abated the nuisance. However, he did not keep the culvert clear and was later sentenced to serve 30 days in the county jail. The court, while recognizing the practice of suspending sentence, held that the defendant, by paying the costs and abating the nuisance, had executed the sentence and was no longer subject to the authority of the court. But did not this result ignore the express condition of the suspension, fairly imposed and accepted by the defendant, that he keep the culvert unobstructed; the decision was never passed upon by our court of last resort.

At the turn of the century our Legislature passed its first act relating to probation. *L.* 1900, *c.* 102 (repealed *L.* 1906, *c.* 74). In section 1 it authorized judges of the Court of Quarter Sessions to appoint probation officers if in their judgment the interests of justice would be promoted thereby. And in section 4 it provided that where a defendant was convicted of crime the court could suspend the imposition of the statutory penalty and place the defendant "upon probation under the care of such probation officer for such time and upon such conditions as the court in its order shall determine." In 1906 the terms of section 4 were restated and made applicable to all courts where convictions are entered. *L.* 1906, *c.* 76. Both the 1900 and 1906 acts contained provisions for rearrest, sentence and confinement in the event of violation of the conditions of probation. In 1907 the Legislature expressly provided that the conditions of probation may include "the payment of a fine or the costs of prosecution, or both." *L.* 1907, *c.* 209.

In 1929 a comprehensive revision of the provisions relating to suspension of sentence and probation was enacted. *L.* 1929, *c.* 156. Section 1 provided that courts having jurisdiction over criminal or *quasi*-criminal actions shall have power after conviction "to suspend the imposition or execution of sentence, and also to place the defendant on probation under the supervision of the chief probation officer of the county for a period of not less than one year nor more than five years." Section 3 relating to conditions of probation provided that the court shall determine the conditions of probation and may, among other matters, include any of the following: that the defendant shall avoid immoral habits; shall report to the probation officer and permit the probation officer to visit him; shall answer reasonable inquiries by the probation officer; shall not change his residence without the consent of the court or probation officer; "shall pay a fine or the costs of the prosecution, or both, in one or several sums"; shall make restitution. Section 4 relating to termination or extension of probation provided that upon violation of the conditions of the probation the

court, after hearing, may revoke the probation and "cause the sentence imposed to be executed or impose any sentence which might originally have been imposed." All of the foregoing provisions were substantially carried over into *R. S.* 2:199–1 *et seq.* and are now found in *N. J. S.* 2A:168–1 *et seq.*

In the light of the abundant coverage in our present Probation Act we need no longer concern ourselves with the implications of the *Addy* case and later decisions which followed it without reference to controlling legislative enactments. *State v. Clifford,* 84 *N. J. L.* 595 (*Sup. Ct.* 1913); *State v. Braunstein,* 5 *N. J. Misc.* 243 (*Sup. Ct.* 1927). See *State v. Mungioli,* 131 *N. J. L.* 52, 55 (*Sup. Ct.* 1943), where the court noted that cases decided before the enactment of our Probation Act "are not helpful." See also *State v. Haber,* 132 *N. J. L.* 507, 510 (*Sup. Ct.* 1945). In *State v. Pascal,* 133 *N. J. L.* 528 (*Sup. Ct.* 1946), *Id.* 1 *N. J.* 261 (1949), the defendant had in 1943 pleaded *non vult* to an indictment charging that he maintained a disorderly house. The court imposed sentence of one to two years in State Prison but suspended the sentence and placed the defendant on probation for three years and imposed a fine of $200 to be paid in installments. In 1945 the defendant was charged with violation of his probation and after hearing it was determined that he had breached the conditions of his probation and he was sentenced to imprisonment for a minimum of 15 months and a maximum of two years. The court held that the Probation Act (*R. S.* 2:199–4) was sufficiently broad to authorize this latter prison sentence though it was in excess of the original prison sentence upon which execution had been suspended. But see *Roberts v. United States,* 320 *U. S.* 264, 64 *S. Ct.* 113, 88 *L. Ed.* 41 (1943). Without expressing any opinion as to the soundness of this particular holding, the following excerpt from the court's opinion appears pertinent to the issues actually presented in the instant matter (133 *N. J. L.,* at *p.* 531):

"It is further argued that because the sentence when originally imposed on June 9th, 1943, merely stated that the prison sentence

was suspended and that the defendant was placed on probation for three years and, additionally, that a fine be paid in installments to the probation officer, and since this—the actual judgment— was not shown to have been disregarded or violated by Pascal, that therefore no case had been or could be made out in the summary hearing. We can give no weight to this reasoning. An offender is placed on probation because a court considers that he may be reformed and is persuaded that probation in the particular case is not inimical to the well-being of society generally. Compare *State v. Mungioli*, 131 *N. J. L.* 52. The very term 'probation' connotes to the average mind an experiment or proving period; that the convicted person escapes the more severe penalty of imprisonment on condition of future good behavior, especially during the probation term; and surely good behavior necessarily excludes a return to previous habits, conduct and the like which brought the probationer into a trial court to stand trial. Any normal person is chargeable with such knowledge. Consequently there is no merit in the point advanced."

In 1950 Adamo was fairly tried and convicted of having committed misdemeanors for which he could then have been imprisoned and fined. *R. S.* 2:103–6—now *N. J. S. 2A*:85–7. Instead of confining him then, as it might well have done, the court pronounced its judgment that he be placed on probation for five years. As his brief on appeal now seems to concede, that was "in effect a suspension of the imposition of a sentence"; it constituted the final judgment appealable as such. See *Korematsu v. United States,* 319 *U. S.* 432, 63 *S. Ct.* 1124, 87 *L. Ed.* 1497 (1943); *Berman v. United States,* 302 *U. S.* 211, 58 *S. Ct.* 164, 82 *L. Ed.* 204 (1937). *Cf. R. R.* 1:2–4. The use of formal language of suspension was not indispensable since the judgment that the defendant "be put on probation for a period of five years" necessarily meant that the imposition of sentence was being suspended. *Cf. Ex Parte DeAngelo,* 50 *F. 2d* 847 (*C. C. A.* 6 1931). That was undoubtedly understood by the defendant and his counsel and no objection thereto was voiced. The period of probation was fixed at five years within *R. S.* 2:199–1, and after it was announced the court properly proceeded with terms which constituted the conditions of probation in strict accordance with *R. S.* 2:199–2. Thus it directed that the defendant report weekly to the probation officer; comply

with the rules of the probation office and observe the laws; not leave the State without permission; and pay a fine of $500. The manner in which the court rendered its judgment discloses beyond peradventure that the fine was simply one of the several conditions of the probation, and it is inconceivable that anyone then contemplated or understood that upon payment of the fine, which might have been made immediately, the five years' probation and all the remaining conditions would automatically terminate.

Acceptance of the defendant's contention that the fine was the sentence and that upon its payment the probation immediately expired would nullify the trial court's considered judgment of probation for five years and would disregard the beneficent purposes of our act which expressly provides that the court may impose various probation conditions including a fine. It would retard rather than advance justice and would represent a reversion to technicalities which are in nowise essential as safeguards of liberty and which have so often in the past discredited the administration of criminal justice. In olden times criminal laws were so severe and the punishment so seldom calculated to fit the crime or the individual offender that, to alleviate resulting hardship and barbarity, courts developed strict rules of criminal procedure which afforded highly technical defenses to defendants. See *Grinnell, supra,* at *p.* 20. With the passage of time and increased enlightenment, our criminal laws became more humane and they are now relatively well calculated to conform with the modern philosophy that insofar as practicable the punishment should be fixed with due consideration of both the nature of the crime and the individual offender. In the instant matter the defendant received, in full measure, not only the protection of our firmly embedded concepts of due process and fair play, but also the benefits of the current penological approaches. He had a fair trial and was convicted of assault. He was not then imprisoned but, in lieu thereof, was placed on five years' probation which he willingly accepted. He was duly advised of the conditions of the probation and made no objection thereto. He was fairly tried

for violating his probation and upon unquestioned proof was found guilty. Although he paid the fine, the other conditions which he violated were, from society's viewpoint, much more important, and for such violation he was sentenced, under the express power conferred by *R. S.* 2:199-4, to a term of imprisonment well within that which could have originally been imposed upon him. It seems to us that it would make a mockery of justice to nullify the sentence of imprisonment at this time and we find neither reason nor authority compelling such action.

The judgment entered in the Appellate Division is reversed and the Law Division's order discharging the writ of *habeas corpus* is reinstated.

*For reversal*—Chief Justice VANDERBILT, and Justices BURLING, JACOBS and BRENNAN—4.

*For affirmance*—Justices HEHER, OLIPHANT and WACHENFELD—3.