614 A.2d 1081

THE STATE OF NEW JERSEY, COMPLAINANT,
v. H.B., A JUVENILE, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Essex County

Decided August 27, 1992.

*Adrian Burke,* Assistant Prosecutor Attorney for the State.

*Paula Getty,* Public Defender.

## OPINION

RUDD, J.S.C.

This preliminary hearing was brought by the State, on August 27, 1992, pursuant to *N.J.S.A.* 2C:29 et seq. The defendant is a 15 year old juvenile who will be referred to as H.B.

## FACTS

This matter originates from an incident of March 18, 1992, when H.B. was charged by the Newark Police Department with possession of a stolen automobile (1987 Buick), a crime of the third degree. *N.J.S.A.* 2C:20–2b.(2)(b).

On May 26, 1992, only H.B.'s mother appeared before me in a calendar call. Since H.B. was missing, I issued a bench warrant. On June 6, 1992, after the bench warrant was executed, H.B. and his mother appeared before me in a detention hearing. I released H.B. to his mother under house arrest.

Services of the Public Defender were arranged for H.B. and on June 25, 1992 he appeared before me with counsel and his mother. H.B. pleaded guilty to one count of receiving stolen property. *N.J.S.A.* 2C:20–7. Finding that H.B. pleaded intelligently, knowingly, and voluntarily, I adjudicated him a juvenile delinquent placing him on probation to his mother with the following conditions: (1) H.B. was to pay the probation officer a VCCB of $30.00, (2) H.B. was to go to school and get a C+ average or better, and (3) H.B. was not to be out after dark unless accompanied by a parent. H.B.'s mother agreed to supervise H.B. and report immediately any violations. I warned H.B. that if he violated probation I would "lock him up."

Subsequently a violation of probation was drawn by HB's mother, alleging that H.B. violated his probationary conditions by "not coming home on two consecutive days." I remanded H.B. to the Youthhouse, Class A. On July 8, 1992, I released H.B. to his mother. H.B. promised that he would never again violate probation. I warned H.B. that if he violated probation again I "would lock him up."

Nevertheless, on August 17, 1992, his mother testified that H.B. again violated probation. I remanded H.B. to the Youthhouse, Class A.

This brings us to August 27, 1992, the case at hand, H.B.'s preliminary hearing to determine whether he again violated probation. H.B. appeared before me with counsel, his mother, and stepfather. He pleaded guilty to violating his probation. Finding that H.B. pleaded intelligently, knowingly, and voluntarily, I asked his mother three questions:

Question: "Did H.B. obey your house rules?"

Answer: "No."

Question: "Do you want me to put him in jail?"

Answer: "No."

Question: "In your opinion, as an expert witness as a mother, do you think H.B. will violate probation again if I let him go home with you?"

Answer: "Yes."

Consequently, I sentenced H.B. to 1 year at the Youth Reception Center at Jamesburg (Jamesburg) pursuant to *N.J.S.A.* 2C:29. Two court attendants then placed handcuffs on H.B. As they walked H.B. to the door, H.B.'s mother began to cry. At this time, H.B. attempted to escape. The court attendants struggled with H.B. They managed to push him out of the courtroom door into the hall where other court attendants then aided in apprehending him.

## ISSUES

The issue is whether the procedures I followed leading to and including H.B.'s sentencing conform to New Jersey's Code of Juvenile Justice. *N.J.S.A.* 2A:4A–20 et seq. Specifically, whether I had the authority to: (1) place H.B. on probation pursuant to the plea bargain between the Prosecutor and H.B.'s Public Defender, (2) appoint H.B.'s mother to be H.B.'s probation supervisor, (3) impose probationary conditions which I deem to aid in rehabilitating H.B., and (4) after a preliminary hearing on whether H.B. violated probation, I could sentence him to 1 year at Jamesburg despite the fact that I did not formally set aside or vacate the original sentence.

## OPINION

It is important to note at the outset that juvenile delinquency cases provide the epitome of the relationship between the law and sociology. On one hand the Family Court is concerned with the complete practice, and procedure, due process of law, and statutory requirements. *In Re Gault,* 387 *U.S.* 1, 87 *S.Ct.* 1428, 18 *L.Ed.*2d 527 (1967). At the same time, it develops comprehensive social plans to meet the complex problems of each juvenile and family. *N.J.S.A.* 2A:4A-20 et seq. The sociology principles include theories of education, methods of therapy and behavior modifications and extended family and treatment modalities. *Id.*

In the dispositional phases of the case, the Family Court exercises the authority which distinguishes it from the adult criminal and civil courts. The Family Court seeks to rehabilitate, not punish, the juveniles through reformation and education. *N.J.S.A.* 2A:4A–21. It actively seeks the juveniles' best interests as well as their families' best interests. The Family Court judge can require parents or guardians to participate in counseling, therapy, education, substantive abuse programs, or any other reasonable programs designed to correct family dysfunction. *N.J.S.A.* 2A:4A–43b(4) and (15). In New Jersey the emphasis is on the family, rather than the juvenile, in developing a total rehabilitative plan.

In juvenile delinquency cases, probationary supervision is a popular disposition employed by the Family Court. Although the theoretical goal of probation is the provision of treatment and guidance that will assist the juvenile's rehabilitative progress, its distinguishing characteristic is the imposition of conditions upon the juvenile's continued freedom. *State in Interest of K.P.,* 167 *N.J.Super.* 290, 400 *A.*2d 840 (App.Div.1979), *State in Interest of D.G.W.,* 70 *N.J.* 488, 361 *A.*2d 513 (1976). As in the case of the adult probationer, the "essence of probation is the condition—a judicially imposed restriction upon the convict's actions after release. The offender's life is closely supervised

by a probation officer; his breach of any of the restrictions may lead to revocation of the limited grant of freedom and imposition of the more coercive penalty prescribed for the crime." Note, *Judicial Review of Probation Conditions*, 67 CO-LUM.L.REV. 181 (1967). This dichotomy of rehabilitative and punitive purpose and effect was recognized by Chief Justice Weintraub:

> The argument assumes that punishment and rehabilitation are somehow incompatible. Of course they are not ... Punishment and rehabilitation are not antagonists. Probation assumes the offender can be rehabilitated without serving the suspended sentence. But this is not to say that probation is meant to be painless. Probation has an inherent sting, and restrictions upon the freedom of the probationer are realistically punitive in quality ... Probation is meant to serve the overall public interest as well as the good of the immediate offender.

[*In re Buehrer*, 50 *N.J.* 501, 509, 236 *A.*2d 592 (1967).]

■ Turning to the case at hand, I had statutory authority to place H.B. on one year probation to his mother subject to the conditions that H.B. was to go to school and get a C+ average or better, and not to be out after dark unless accompanied by a parent. Specifically, *N.J.S.A.* 2A:4A–43(b)(3) states:

> b. If a juvenile is adjudicated delinquent the court may order incarceration pursuant to section 25 of this act or any one or more of the following disposition.
> .... (3) Place the juvenile on probation to the chief probation officer or any other suitable person who agrees to accept the duty of probation supervision for a period not to exceed 3 years upon such written conditions as the court deems will aid rehabilitation of the juvenile.

It has two interesting features: First, is the fact that a juvenile can be placed on probation to someone other than the chief officer *e.g.* juvenile's mother, father, DYFS. Second, is the broad discretion it gives Family Court judges in imposing probationary conditions *i.e.* "conditions as the court deems will aid rehabilitation of the juvenile." Presumably, a juvenile's driver's license could be revoked as a condition of violation where the juvenile had driven a car in the commission of his offense. *State in Interest of J.A.B.*, 175 *N.J.Super.* 396, 418, 418 *A.*2d 1317 (App.Div.1980).

In the present case, conditioning H.B.'s probation on his going to school and getting a C+ average or better and not going out after dark unless accompanied by a parent will clearly "aid in his rehabilitation." Since H.B. was charged with possession of receiving a stolen automobile, it follows keeping him off the streets of Newark at night will aid in rehabilitating him. The court takes judicial notice of the fact that Newark at night has become notorious for juveniles stealing cars and trying to out-muscle the police. Education will also aid in rehabilitating H.B. by reforming him from a juvenile delinquent to a useful citizen. *In re Lewis,* 11 *N.J.* 217, 94 *A.*2d 328 (1954).

■ Imposing a fine or restitution as a probationary condition is authorized under *N.J.S.A.* 2A:4A–43(b)(8) and (9), which states:

b. If a juvenile is adjudicated delinquent the court may order incarceration pursuant to section 25 of this act or any one or more of the following disposition.

.... (8) Fine the juvenile an amount not to exceed the maximum provided by law for such a crime or offense if committed by an adult..., provided that the fine is specially adapted to the rehabilitation of the juvenile or to the deterrence of the type of crime or offense.

(9) Order the juvenile to make restitution to a person or entity who has suffered loss resulting from personal injuries or damage to property as a result of the offense which the juvenile has been adjudicated delinquent.

Thus, I was authorized to impose a VCCB of 30.00 upon H.B. as a probationary condition. A VCCB is a fund collected for the victims of juvenile delinquent acts.

■ Having thus determined that placing H.B. on probation to his mother with the above probationary conditions were authorized, I now address the issue of whether I properly sentenced H.B. to one year at Jamesburg.

A preliminary hearing with counsel, testimony, and an opportunity to cross-examine to determine whether a juvenile violated probation is proper procedure provided that when the juvenile was placed on probation he was represented by counsel. *State in Interest of G.J.,* 108 *N.J.Super.* 186, 260 *A.*2d 513 (App.Div.1969), *State in Interest of A.R.,* 246 *N.J.Super.* 241,

587 *A*.2d 288 (App.Div.1991). Moreover, since I had statutory authority to appoint H.B.'s mother as probationary supervisor, *N.J.S.A.* 2A:4A–43(b)(3) stated above, it follows that her testimony and H.B.'s guilty plea are sufficient to find that H.B. violated probation.

Furthermore, a one year sentence to Jamesburg was proper. The Superior Court, Appellate Division held:

> [F]or a violation of probation, it is the maximum for the offense that sets the limit for the new sentence. *N.J.S.A.* 2C:45–3b. The same is true of a juvenile, in that the court retains jurisdiction to substitute another disposition which it might have made originally. *N.J.S.A.* 2:4A–45b.
>
> [*State in Interest of A.R.*, 246 *N.J.Super.* 241, 243, 587 *A*.2d 288 (App.Div. 1991).]

A one year sentence in the present case is proper because theft of a stolen car is a crime of the third degree and thus its maximum time is 2 years. *N.J.S.A.* 2C:2–2(b)(2), 2A:4A–44(d)(1)(e). Technically, I could have sentenced H.B. up to two years at Jamesburg.

Lastly, the New Jersey Supreme Court has held in adult probationer cases that the courts have the power to impose any sentence which it might have originally been imposed and in doing so, was not imposing a re-sentencing but was imposing one which it was empowered to impose, and legality of such sentence could not be questioned on the ground that the court did not specifically vacate or set aside the original sentence. *In re White*, 18 *N.J.* 449, 114 *A*.2d 261 (1955), *Adamo v. McCorkle*, 13 *N.J.* 561, 100 *A*.2d 674 (1953). In *Adamo*, the Court reasoned that to rule otherwise "would retard rather than advance justice and would represent a reversion to technicalities which are in nowise essential as safeguards of liberty and which have so often in the past discredited the administration of criminal justice." *Adamo*, at 568, 100 *A*.2d 674. While the Court has not specifically held that this rule applies to juvenile probationers, the Court's reasoning implies that my sentencing could not be questioned on the ground that I did not formally vacate or set aside the original sentence.

I warned H.B. twice that I would "lock him up" if he violated his probation: when I placed him on probation and after his first violation of probation hearing. In committing a 14 year old girl, the court noted that the girl had been warned of the consequences of violating probation. *State in Interest of G.J.,* 108 *N.J.Super.* 186, 188, 260 *A.*2d 513 (App.Div.1969).

In making my decision to sentence H.B. to one year at Jamesburg, I considered the ramifications of allowing H.B. to return home and continually violate his probation *e.g.* the juvenile's system's failure to rehabilitate H.B. for his original offense of receiving stolen property. *State v. Baylass,* 114 *N.J.* 169, 176, 553 *A.*2d 326 (1989). The court in *State in Interest of J.J.,* 132 *N.J.Super.* 464, 471, 334 *A.*2d 80 (J & D.R. Ct.1975), noted that courts must have some means by which to encourage compliance with probationary conditions, or "the entire process may become farcical and ineffective."