**619 A.2d 1321**

STATE OF NEW JERSEY, IN THE INTEREST
OF J.L.A., JUVENILE–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 13, 1992—Decided February 24, 1993.

Before Judges PETRELLA, LONG and KEEFE.

*Zulima v. Farber*, Public Defender, attorney for appellant (*Diane Toscano*, Assistant Deputy Public Defender, of counsel and on the brief).

*Edward F. Borden, Jr.*, Camden County Prosecutor, attorney for respondent (*Norma R. Evans*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

LONG, J.A.D.

After a bench trial, J.L.A., a juvenile, was adjudicated a delinquent and committed to Jamesburg for an indeterminate term not to exceed four years for acts which, if committed by an adult, would have constituted first-degree robbery, contrary to *N.J.S.A.* 2C:15–1. He was also committed to a consecutive term not to exceed three years for acts which, if committed by an adult, would have constituted aggravated assault, contrary to *N.J.S.A.* 2C:12–1b(1).

J.L.A. appeals, contending that:

POINT I:

THE ADJUDICATIONS OF DELINQUENCY ON THE ARMED ROBBERY AND AGGRAVATED ASSAULT CHARGES WERE AGAINST THE WEIGHT OF THE EVIDENCE AND MUST THEREFORE BE REVERSED. (NOT RAISED BELOW).

POINT II:

THE TRIAL COURT'S REFUSAL TO GRANT A CONTINUANCE FOR THE DEFENSE TO CALL OFFICER KLINE DENIED DEFENDANT A FAIR TRIAL.

POINT III:

THE TRIAL COURT ERRED IN IMPOSING A CONSECUTIVE SENTENCE UPON JUVENILE J.L.A., SINCE THE CODE OF JUVENILE JUSTICE (*N.J.S.A.* 2A:4A–20 *ET SEQ.*) CONTAINS NO PROVISION AUTHORIZING THE IMPOSITION OF CONSECUTIVE [DISPOSITIONS].

POINT IV:

ASSUMING CONSECUTIVE DISPOSITIONS ARE AUTHORIZED BY THE CODE OF JUVENILE JUSTICE, THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE DISPOSITIONS UPON J.L.A.

We have carefully reviewed this record in light of these contentions and have concluded that the issues raised in Points I and II of J.L.A.'s brief are clearly without merit. *R.*2:11–3(e)(2).

However, we agree with J.L.A. that consecutive dispositions are unauthorized by the Code of Juvenile Justice. *N.J.S.A.* 2A:4A–20 to –91.

The Juvenile Code became effective in December, 1983. Its stated purposes are fundamentally rehabilitative:

a. To preserve the unity of the family whenever possible and to provide for the care, protection, and wholesome mental and physical development of juveniles coming within the provisions of this act;

b. Consistent with the protection of the public interest, to remove from children committing delinquent acts certain statutory consequences of criminal behavior, and to substitute therefor an adequate program of supervision, care and rehabilitation;

c. To separate juveniles from the family environment only when necessary for their health, safety or welfare or in the interests of public safety;

d. To secure for each child coming under the jurisdiction of the court such care, guidance and control, preferably in his own home, as will conduce to the child's welfare and the best interests of the State; and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents;

e. To insure that children under the jurisdiction of the court are wards of the State, subject to the discipline and entitled to the protection of the State, which may intervene to safeguard them from neglect or injury and to enforce the legal obligations due to them and from them. [*N.J.S.A.* 2A:4A–21].

To this end, a detailed methodology to deal with juvenile offenders was established by the Code of Juvenile Justice, including 18 separate dispositional options. *N.J.S.A.* 2A:4A–43. Among the available dispositions are in-home supervision, probation, civil commitment, fines, restitution and community service. Additionally, incarceration is included as an available disposition. *N.J.S.A.* 2A:4A–44. Extended terms may be imposed in the limited circumstances delineated in *N.J.S.A.* 2A:4A–44d(3). Finally, the Code of Juvenile Justice allows, in appropriate cases, referral to adult court where harsher adult penalties apply. *N.J.S.A.* 2A:4A–26.

Not mentioned in the Code is the alternative of imposing consecutive dispositions upon a juvenile adjudicated delinquent for more than one offense. J.L.A. argues that the absence of a reference to consecutive dispositions is an indication of the Legislature's intent to omit that option. The State counters

that if the Legislature had intended to prohibit consecutive terms of incarceration it would have done so, and that, without a clear statement to that effect, we should interpret the statute as allowing for consecutive treatment.

In construing this statute, we are mindful that our role is to give effect to the Legislature's intent. *Johnson Machinery Co., Inc. v. Manville Sales Corp.*, 248 *N.J.Super.* 285, 303, 590 *A.*2d 1206 (App.Div.1991). *See also Monmouth County v. Wissell*, 68 *N.J.* 35, 42, 342 *A.*2d 199 (1975); *Cedar Cove v. Stanzione*, 233 *N.J.Super.* 336, 340, 558 *A.*2d 1351 (App.Div.1989), *rev'd on other grounds*, 122 *N.J.* 202, 584 *A.*2d 784 (1991); *Coletti v. Union County Bd. of Chosen Freeholders*, 217 *N.J.Super.* 31, 35, 524 *A.*2d 1270 (App.Div.1987); *State v. H.J.B.*, 240 *N.J.Super.* 216, 220–21, 572 *A.*2d 1205 (Law Div.1990); *Shapiro v. Essex County Bd. of Chosen Freeholders*, 177 *N.J.Super.* 87, 92–93, 424 *A.*2d 1203 (Law Div.1980), *aff'd* 183 *N.J.Super.* 24, 443 *A.*2d 219 (App.Div.), *aff'd*, 91 *N.J.* 430, 453 *A.*2d 158 (1982). Among the sources of legislative intent are the language chosen by the Legislature, the policy behind the act, its legislative history, and concepts of reasonableness. *Cedar Cove, supra*, 233 *N.J.Super.* at 340, 558 *A.*2d 1351; *Shapiro, supra*, 177 *N.J.Super.* at 93, 424 *A.*2d 1203. Statutes are to be read sensibly and the controlling legislative intent is to be presumed as "consonant to reason and good discretion." *Schierstead v. City of Brigantine*, 29 *N.J.* 220, 230, 148 *A.*2d 591 (1959) (citations omitted). "In construing a statute, we assume that the Legislature intended a reasonable approach ...", *Roman v. Sharper*, 53 *N.J.* 338, 341, 250 *A.*2d 745 (1969), not one "at odds with the sense of the situation." *Id.* at 340, 250 *A.*2d 745; *Cedar Cove, supra*, 233 *N.J.Super.* at 341, 558 *A.*2d 1351.

A full review of the legislative history of the Code of Juvenile Justice sheds no light on the issue before us. The statement of policy underlying the Code, as expressed in *N.J.S.A.* 2A:4A–21, is helpful insofar as it affirms the thrust of

the Code as being fundamentally redemptive and not retributive. However, because the Code nevertheless makes specific provision for incarceration, extended terms and waiver to adult court, its rehabilitative theme is not dispositive on the issue of consecutive dispositions.

As to precedent, this is a case of first impression. Although prior decisions have been rendered regarding consecutive sentences for youthful *adult* offenders, an entirely distinct category, *See State v. Carroll,* 66 *N.J.* 558, 334 *A.*2d 17 (1975); *State v. Horton,* 45 *N.J.Super.* 44, 131 *A.*2d 425 (App.Div.1957), no decision on the issue of consecutive juvenile dispositions has issued since the effective date of the Code in 1983. Even prior to the enactment of the Code, only one decision on this subject was reported. In *State in the Interest of T.B.,* 149 *N.J.Super.* 1, 372 *A.*2d 1345 (App.Div.1977), a panel of this court declared consecutive dispositions to be authorized under then current law, disapproved a general use of such dispositions and questioned whether they are "contrary to the rehabilitative purpose of the Act ..." *Id.* at 5 n. 1, 372 *A.*2d 1345.

In short, it seems to us that it is the language of the Code of Juvenile Justice itself, tested against established canons of statutory construction, which is the key to what the Legislature intended in enacting it. We begin with the omission of specific authorization for consecutive dispositions. While we are ordinarily wary of placing too much emphasis on legislative silence, we think it speaks volumes in this case. A review of the statute demonstrates this point. *N.J.S.A.* 2A:4A–43 sets forth the legislatively approved dispositions.

(1) Adjourn formal entry of disposition of the case for a period not to exceed 12 months for the purpose of determining whether the juvenile makes a satisfactory adjustment, and if during the period of continuance the juvenile makes such an adjustment, dismiss the complaint; provided that if the court adjourns formal entry of disposition of delinquency for a violation of an offense defined in chapter 35 or 36 of Title 2C, of the New Jersey Statutes the court shall assess the mandatory penalty as set forth in N.J.S. 2C:35–15 but may waive imposition of the penalty set forth in N.J.S. 2C:35–16 for juveniles adjudicated delinquent;

(2) Release the juvenile to the supervision of his or her parent or guardian;

(3) Place the juvenile on probation to the chief probation officer of the county or to any other suitable person who agrees to accept the duty of probation supervision for a period not to exceed 3 years upon such written conditions as the court deems will aid rehabilitation of the juvenile;

(4) Transfer custody of the juvenile to any relative or other person determined by the court to be qualified to care for the juvenile;

(5) Place the juvenile under the care of the Department of Human Services under the responsibility of the Division of Youth and Family Services pursuant to P.L.1951, c. 138, s. 2(c) (C. 30:4C–2(c)) for the purpose of providing services in or out of the home. Within 14 days, unless for good cause shown, but not later than 30 days, the Department of Human Services shall submit to the court a service plan, which shall be presumed valid, detailing the specifics of any disposition order. The plan shall be developed within the limits of fiscal and other resources available to the department. If the court determines that the service plan is inappropriate, given existing resources, the department may request a hearing on that determination;

(6) Place the juvenile under the care and custody of the Commissioner of the Department of Human Services for the purpose of receiving the services of the Division of Mental Retardation of that department, provided that the juvenile has been determined to be eligible for those services under P.L.1965, c. 59, s. 16 (C. 30:4–25.4);

(7) Commit the juvenile, pursuant to the laws governing civil commitment, to the Department of Human Services under the responsibility of the Division of Mental Health and Hospitals for the purpose of placement in a suitable public or private hospital or other residential facility for the treatment of persons who are mentally ill, on the ground that the juvenile, if not committed, would be a probable danger to himself or others or property by reason of mental illness;

(8) Fine the juvenile an amount not to exceed the maximum provided by law for such a crime or offense if committed by an adult and which is consistent with the juvenile's income or ability to pay and financial responsibility to his family, provided that the fine is specially adapted to the rehabilitation of the juvenile or to the deterrence of the type of crime or offense. If the fine is not paid due to financial limitations, the fine may be satisfied by requiring the juvenile to submit to any other appropriate disposition provided for in this section;

(9) Order the juvenile to make restitution to a person or entity who has suffered loss resulting from personal injuries or damage to property as a result of the offense for which the juvenile has been adjudicated delinquent. The court may determine the reasonable amount, terms and conditions of restitution. If the juvenile participated in the offense with other persons, the participants shall be jointly and severally responsible for the payment of restitution. The court shall not require a juvenile to make full or partial restitution if the juvenile reasonably satisfies the court that he does not have the means to make restitution and could not reasonably acquire the means to pay restitution;

(10) Order that the juvenile perform community services under the supervision of a probation department or other agency or individual deemed appropriate by

the court. Such services shall be compulsory and reasonable in terms of nature and duration. Such services may be performed without compensation, provided that any money earned by the juvenile from the performance of community services may be applied towards any payment of restitution or fine which the court has ordered the juvenile to pay;

(11) Order that the juvenile participate in work programs which are designed to provide job skills and specific employment training to enhance the employability of job participants. Such programs may be without compensation, provided that any money earned by the juvenile from participation in a work program may be applied towards any payment of restitution or fine which the court has ordered the juvenile to pay;

(12) Order that the juvenile participate in programs emphasizing self-reliance, such as intensive outdoor programs teaching survival skills, including but not limited to camping, hiking and other appropriate activities;

(13) Order that the juvenile participate in a program of academic or vocational education or counseling, such as a youth service bureau, requiring attendance at sessions designed to afford access to opportunities for normal growth and development. This may require attendance after school, evenings and weekends;

(14) Place the juvenile in a suitable residential or nonresidential program for the treatment of alcohol or narcotic abuse, provided that the juvenile has been determined to be in need of such services; or

(15) Order the parent or guardian of the juvenile to participate in appropriate programs or services when the court has found either that such person's omission or conduct was a significant contributing factor towards the commission of the delinquent act, or, under its authority to enforce litigant's rights, that such person's omission or conduct has been a significant contributing factor towards the ineffective implementation of a court order previously entered in relation to the juvenile;

(16)(a) Place the juvenile in a nonresidential program operated by a public or private agency, providing intensive services to juveniles for specified hours, which may include education, counseling to the juvenile and the juvenile's family if appropriate, vocational training, employment counseling, work or other services; or

(b) Place the juvenile under the custody of the Department of Corrections for placement with any private group home or private residential facility with which the department has entered into a purchase of service contract;

(17) Instead of or in addition to any disposition made according to this section, the court may postpone, suspend, or revoke for a period not to exceed 2 years the driver's license, registration certificate, or both of any juvenile who used a motor vehicle in the course of committing an act for which he was adjudicated delinquent. In imposing this disposition and in deciding the duration of the postponement, suspension, or revocation, the court shall consider the severity of the delinquent act and the potential effect of the loss of driving privileges on the juvenile's ability to be rehabilitated. Any postponement, suspension, or revocation shall be imposed consecutively with any custodial commitment; or

(18) Order that the juvenile satisfy any other conditions reasonably related to the rehabilitation of the juvenile.

c. (1) If the county in which the juvenile has been adjudicated delinquent has a juvenile detention facility meeting the physical and program standards established pursuant to this subsection by the Department of Corrections, the court may, in addition to any of the dispositions not involving placement out of home enumerated in this section, incarcerate the juvenile in the youth detention facility in that county for a term not to exceed 60 consecutive days. Counties which do not operate their own juvenile detention facilities may contract for the use of approved commitment programs with counties with which they have established agreements for the use of pre-disposition juvenile detention facilities. The Department of Corrections shall promulgate such rules and regulations from time to time as deemed necessary to establish minimum physical facility and program standards for the use of juvenile detention facilities pursuant to this subsection.

(2) No juvenile may be incarcerated in any county detention facility unless the county has entered into an agreement with the Department of Corrections concerning the use of the facility for sentenced juveniles. Upon agreement with the county, the Department of Corrections shall certify detention facilities which may receive juveniles sentenced pursuant to this subsection and shall specify the capacity of the facility that may be made available to receive such juveniles; provided, however, that in no event shall the number of juveniles incarcerated pursuant to this subsection exceed 50% of the maximum capacity of the facility.

(3) The court may fix a term of incarceration under this subsection where:

(a) The act for which the juvenile was adjudicated delinquent, if committed by an adult, would have constituted a crime or repetitive disorderly persons offense;

(b) Incarceration of the juvenile is consistent with the rehabilitative goals of this act and the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors as set forth in section 25 of this act; and

(c) The detention facility has been certified for admission of adjudicated juveniles pursuant to paragraph (2).

(4) If as a result of incarceration of adjudicated juveniles pursuant to this subsection, a county is required to transport a predisposition juvenile to a juvenile detention facility in another county, the costs of such transportation shall be borne by the Department of Corrections.

d. Whenever the court imposes a disposition upon an adjudicated delinquent which requires the juvenile to perform a community service, restitution, or to participate in any other program provided for in this section other than subsection c., the duration of the juvenile's mandatory participation in such alternative programs shall extend for a period consistent with the program goal for the juvenile and shall in no event exceed 1 year beyond the maximum duration permissible for the delinquent if he has been committed to a correctional institution.

The considerations governing incarceration are, in turn, set forth in *N.J.S.A.* 2A:4A-44, which provides:

a. (1) In determining whether incarceration is an appropriate disposition, the court shall consider the following aggravating circumstances:

(a) The fact that the nature and circumstances of the act, and the role of the juvenile therein, was committed in an especially heinous, cruel, or depraved manner;

(b) The fact that there was grave and serious harm inflicted on the victim and that based upon his age or mental capacity the juvenile knew or reasonably should have known that the victim was particularly vulnerable or incapable of resistance due to advanced age, disability, ill-health, or extreme youth, or was for any other reason substantially incapable;

(c) The character and attitude of the juvenile indicate that he is likely to commit another delinquent or criminal act;

(d) The juvenile's prior record and the seriousness of any acts for which he has been adjudicated delinquent;

(e) The fact that the juvenile committed the act pursuant to an agreement that he either pay or be paid for the commission of the act and that the pecuniary incentive was beyond that inherent in the act itself;

(f) The fact that the juvenile committed the act against a policeman or other law enforcement officer, correctional employee or fireman, acting in the performance of his duties while in uniform or exhibiting evidence of his authority, or the juvenile committed the act because of the status of the victim as a public servant;

(g) The need for deterring the juvenile and others from violating the law;

(h) The fact that the juvenile knowingly conspired with others as an organizer, supervisor, or manager to commit continuing criminal activity in concert with two or more persons and the circumstances of the crime show that he has knowingly devoted himself to criminal activity as part of an ongoing business activity;

(i) The fact that the juvenile on two separate occasions was adjudged a delinquent on the basis of acts which if committed by an adult would constitute crimes.

(2) In determining whether incarceration is an appropriate disposition the court shall consider the following mitigating circumstances:

(a) The child is under the age of 14;

(b) The juvenile's conduct neither caused nor threatened serious harm;

(c) The juvenile did not contemplate that his conduct would cause or threaten serious harm;

(d) The juvenile acted under a strong provocation;

(e) There were substantial grounds tending to excuse or justify the juvenile's conduct, though failing to establish a defense;

(f) The victim of the juvenile's conduct induced or facilitated its commission;

(g) The juvenile has compensated or will compensate the victim for the damage or injury that the victim has sustained, or will participate in a program of community service;

(h) The juvenile has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present act;

(i) The juvenile's conduct was the result of circumstances unlikely to recur;

(j) The character and attitude of the juvenile indicate that he is unlikely to commit another delinquent or criminal act;

(k) The juvenile is particularly likely to respond affirmatively to noncustodial treatment;

(*l*) The separation of the juvenile from his family by incarceration of the juvenile would entail excessive hardship to himself or his family;

(m) The willingness of the juvenile to cooperate with law enforcement authorities;

(n) The conduct of the juvenile was substantially influenced by another person more mature than the juvenile.

b. (1) There shall be a presumption of nonincarceration for any crime or offense of the fourth degree or less committed by a juvenile who has not previously been adjudicated delinquent or convicted of a crime or offense.

(2) Where incarceration is imposed, the court shall consider the juvenile's eligibility for release under the law governing parole.

c. The following juveniles shall not be committed to a State correctional facility:

(1) Juveniles aged 11 or under unless adjudicated delinquent for the crime of arson or a crime which, if committed by an adult, would be a crime of the first or second degree; and

(2) Juveniles who are developmentally disabled as defined in paragraph (1) of subsection a. of section 3 of P.L.1977, c. 82 (C. 30:6D-3a(1)).

d. (1) When the court determines that, based on the consideration of all the factors set forth in subsection a., the juvenile shall be incarcerated, unless it orders the incarceration pursuant to subsection c. of section 24 of this act [*N.J.S.A.* 2A:4A-43], it shall state on the record the reasons for imposing incarceration, including any findings with regard to these factors, and commit the juvenile to a suitable institution maintained by the Department of Corrections for the rehabilitation of delinquents pursuant to the conditions set forth in this subsection and for terms not to exceed the maximum terms as provided herein for what would constitute the following crimes if committed by an adult:

(a) Murder under N.J.S. 2C:11–3a(1) or (2) . . . 20 years
(b) Murder under N.J.S. 2C:11–3a(3) . . . . . . . . . 10 years
(c) Crime of the first degree, except murder  4 years
(d) Crime of the second degree . . . . . . . . . . . . . 3 years
(e) Crime of the third degree . . . . . . . . . . . . . . 2 years
(f) Crime of the fourth degree . . . . . . . . . . . . . 1 year
(g) Disorderly persons offense . . . . . . . . . . . . . 6 months

(2) The period of confinement shall continue until the appropriate paroling authority determines that such a person should be paroled; except that in no case shall the period of confinement and parole exceed the maximum provided by law for such offense. However, if a juvenile is approved for parole prior to serving one-third of any term imposed for any crime of the first, second or third degree, including any extended term imposed pursuant to paragraph (3) or (4) of this subsection, or one-fourth of any term imposed for any other crime the granting of parole shall be subject to approval of the sentencing court. Prior to approving parole, the court shall give the prosecuting attorney notice and an opportunity to be heard. If the court denies the parole of a juvenile pursuant to this paragraph it shall state its reasons in writing and notify the parole board, the juvenile and the juvenile's attorney. The court shall have 30 days from the date of notice of the pending parole to exercise the power granted under this paragraph. If the court does not respond within that time period, the parole will be deemed approved.

Any juvenile committed under this act who is released on parole prior to the expiration of his maximum term may be retained under parole supervision for a period not exceeding the unserved portion of the term. The Parole Board, the juvenile, his attorney, his parent or guardian, or with leave of the court any other interested party, may make a motion to the court, with notice to the prosecuting attorney, for the return of the child from a correctional institution prior to his parole and provide for an alternative disposition which would not exceed the duration of the original time to be served in the institution. Nothing contained in this paragraph shall be construed to limit the authority of the Parole Board as set forth in section 15 of P.L.1979, c. 441 (C. 30:4-123.59).

(3) Upon application by the prosecutor, the court may sentence a juvenile who has been convicted of a crime of the first, second, or third degree if committed by an adult, to an extended term of incarceration beyond the maximum set forth in paragraph (1) of this subsection, if it finds that the juvenile was adjudged delinquent on at least two separate occasions, for offenses which, if committed by an adult, would constitute a crime of the first or second degree, and was previously committed to an adult or juvenile State correctional facility. The extended term shall not exceed 5 additional years for an act which would constitute murder and shall not exceed 2 additional years for all other crimes of the first degree or second degree, if committed by an adult, and 1 additional year for a crime of the third degree, if committed by an adult.

(4) Upon application by the prosecutor, when a juvenile is before the court at one time for disposition of three or more unrelated offenses which, if committed by an adult, would constitute crimes of the first, second or third degree and which are not part of the same transaction, the court may sentence the juvenile to an extended term of incarceration not to exceed the maximum of the permissible term for the most serious offense for which the juvenile has been adjudicated plus 2 additional years.

We have reproduced these aspects of the Code of Juvenile Justice in numbing detail for a purpose. Specifically, the purpose is to show that in enacting the Code, the Legislature

did not merely prescribe a dispositional skeleton, the interstices of which were meant to be filled in by construction. On the contrary and in painstaking detail, a comprehensive scheme, essentially complete as written, was set forth. Indeed, in the face of dispositional minutiae such as the authorization of hiking and camping programs to encourage self-reliance, *N.J.S.A.* 2A:4A–43b(12), it is hard to imagine that the Legislature intended its silence as to any other disposition to stand for more than its omission.

This view is supported by the 1979 Code of Criminal Justice in which the Legislature specifically authorized consecutive sentences for multiple criminal offenses and set forth the methodology for calculating such terms. *N.J.S.A.* 2C:44–5a, e. The difference between the Criminal and Juvenile Codes likely reflects a legislative recognition that consecutive dispositions are of a piece with the punishment and "desert" focus of the former, *See State v. Yarbough*, 100 *N.J.* 627, 630, 498 *A.*2d 1239 (1985), *cert. den.*, 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986), but out of phase with the rehabilitative thrust of the latter. Genesis aside, what may fairly be inferred from a facial comparison of the two Codes is that the Legislature fully understood the concept of consecutive sentencing, which springs from the common law, *State v. Maxey*, 42 *N.J.* 62, 198 *A.*2d 768 (1964), and that, by including it in the Criminal Code but omitting it from the Juvenile Code, it intended consecutive dispositions not to be an available arrow in the juvenile judge's dispositional quiver.

This view is bolstered by another provision of the Code of Juvenile Justice, *N.J.S.A.* 2A:4A–43b(17), which prescribes:

Instead of or in addition to any disposition made according to this section, the court may postpone, suspend, or revoke for a period not to exceed 2 years the driver's license, registration certificate, or both of any juvenile who used a motor vehicle in the course of committing an act for which he was adjudicated delinquent. In imposing this disposition and in deciding the duration of the postponement, suspension, or revocation, the court shall consider the severity of the delinquent act and the potential effect of the loss of driving privileges on the juvenile's ability to be rehabilitated. *Any postponement, suspension, or revocation shall be imposed consecutively with any custodial commitment.* [emphasis added].

In this section, the point of which is to assure that a juvenile is not able to serve a license suspension while incarcerated, the Legislature showed, as it did in enacting the Criminal Code, that it was aware of its power with respect to the consecutive option. Having authorized the power in one section of the statute, ordinarily it should not be implied where excluded. *Marshall v. Western Union Telegraph Co.*, 621 *F.*2d 1246 (3d Cir.1980).

Most telling to us is that provision of the Code of Juvenile Justice which allows for extended term sentencing. *N.J.S.A.* 2A:4A–44d(4) provides that:

> Upon application by the prosecutor, when a juvenile is before the court at one time for disposition of three or more unrelated offenses which, if committed by an adult, would constitute crimes of the first, second or third degree and which are not part of the same transaction, the court may sentence the juvenile to an extended term of incarceration not to exceed the maximum of the permissible term for the most serious offense for which the juvenile has been adjudicated plus 2 additional years.

Under this section, a juvenile who commits three unrelated offenses at different times can only be sentenced to the maximum term for the most serious of the three offenses plus two years. Thus, a juvenile adjudicated delinquent for three distinct and unrelated acts which, if committed by an adult, would constitute first degree offenses would be subject to a statutory maximum of six years (four years plus the two year extended term). *N.J.S.A.* 2A:4A–44d(1), (4).

The State argues that the Legislature nevertheless intended to preserve consecutive treatment for identical offenses arising out of one transaction. Under this view, a juvenile convicted of several offenses committed in a single, isolated, aberrant criminal event would be subject to significantly greater punishment than a juvenile who undertook three separate and distinct criminal transactions. This result flies in the face of the reform guidelines for incremental punishment set forth in *Yarbough, supra,* 100 *N.J.* at 644, 498 *A.*2d 1239, and is neither consonant with reason nor good discretion. It does not seem to us that it could have been the Legislature's intent to expose the

more culpable juvenile to a lesser penalty. While we might enforce what we would otherwise view as an unwise or an anomalous result if the Legislature had clearly expressed its will, we will not supply, by implication, a term which conflicts in spirit with another provision of the Code.

Finally, we note that the statutory sentencing provisions codified by the Legislature in the Code are penal and must be strictly construed. *State v. Valentin*, 105 *N.J.* 14, 17, 519 *A.*2d 322 (1987).

> The rule that penal statutes are to be strictly construed has at its heart the requirement of due process. No one shall be punished for a crime unless both that crime *and its punishment* are clearly set forth in positive laws. [*Id.* at 17–18, 519 *A.*2d 322 (quoting *In re DeMarco*, 83 *N.J.* 25, 36, 414 *A.*2d 1339 (1980)) (emphasis added)].

Such laws cannot be extended by implication or intendment. *Valentin, supra,* 105 *N.J.* at 18, 519 *A.*2d 322. Thus, where more than one reasonable interpretation may be made or where the language is ambiguous, the narrowest construction will prevail. *Id.* Here, it is only by supplying words which were specifically omitted by the Legislature that the consecutive disposition option can be wrested out of the Code of Juvenile Justice. Even if this were not the case and two reasonable interpretations of the Code (one allowing consecutive dispositions and one not) could be read from the face of it, the principle that the narrowest construction of a penal statute will prevail informs our rejection of the more expansive interpretation.[1]

For these reasons, we reverse the consecutive dispositions imposed on J.L.A. and remand the case to the trial judge for a

---

[1] In reaching our conclusion, we have taken into consideration a Parole Board regulation which makes reference to consecutive juvenile commitments. *N.J.A.C.* 10A:71–3.23(c) provides that, at a Juvenile Parole hearing, among the aggravating factors which may be considered in determining whether a juvenile's tentative parole date should be altered from the presumptive term is whether "[t]he inmate has received additional concurrent or consecutive commitments." Because this regulation pre-existed the Code, *N.J.A.C.* 10A:71–3.21(c)(1) and (2) (1980), at which point consecutive juvenile dispositions,

disposition consonant with this opinion. The adjudication of delinquency is otherwise affirmed.

although questionable, *See State in the Interest of T.B., supra,* 149 *N.J.Super.* at 5 n. 1, 372 *A.2d* 1345, were apparently authorized, we do not view it as an interpretation of the later enacted Code provisions to which some deference should accrue. Interestingly, the regulation treats the existence of additional commitments as aggravating factors in themselves and does not distinguish between them based on the type of disposition imposed.