647 A.2d 866

STATE IN THE INTEREST OF D.R.

Superior Court of New Jersey
Chancery Division
Middlesex County

Decided June 13, 1994.

*Pedro Jimenez,* Assistant Prosecutor, Middlesex County, for the State.

*Maria Valle Koch,* Deputy Public Defender, for the Juvenile.

KRAVARIK, J.S.C.

█ The defense brought the issue presented before this court by way of a motion for reconsideration to grant the juvenile a modified sentence. This motion presents what appears to be a case of first impression. This court must decide whether a juvenile, who has received a custodial disposition for one offense and, while serving that disposition, commits a separate offense, can be subject to an additional sentence for that subsequent offense.

## Factual Background:

D.R. has, unfortunately, had a long history of involvement with the juvenile court system, beginning as early as 1981, when he was only eight years old. The incidents which precipitated this action, however, did not begin until October 29, 1992. On that date, because D.R. had failed to both complete the court ordered Perth Amboy Day Program and to make regular payments towards his fines and penalties, the probation officer signed a juvenile delinquency complaint against D.R. for a violation of probation in accordance with N.J.S.A. 2C:45-3. D.R. pled guilty to this charge on February 17, 1993.

On February 18, 1993, the court resentenced D.R. to a custodial disposition which had been previously imposed and suspended. This disposition was not to exceed a term of two years incarceration in the custody of the Commissioner of the Department of Corrections. This court also applied a credit to D.R.'s term of eighty-four days for time served pursuant to R. 3:21-8.

D.R. began serving his disposition at the Ogden Residential Group Center, a satellite unit of the New Jersey Department of Corrections. However, on June 12, 1993, between the hours of 11:30 p.m. and 12:00 a.m., D.R. and another juvenile escaped from the facility. As a result of this escape, on August 2, 1993, the Assistant Prosecutor assigned to the case requested that the matter be put on the court's calendar so that the State might move for a bench warrant pursuant to R. 5:20-3. This request

was granted. On August 11, 1993, the Assistant Prosecutor appeared before the court, the complaint against D.R. was inactivated and a bench warrant was issued for his arrest.

The matter was then set down for a formal trial call on March 16, 1994. On that date, with his mother, the defense counsel and the Assistant Prosecutor present, D.R. pled guilty to the escape charge. The court remanded D.R., then aged nineteen, to the Garden State Reception and Youth Correctional Facility and ordered a pre-dispositional investigation to be done prior to the dispositional hearing.

On May 9, 1994, after consideration of the completed pre-dispositional investigation, the court ordered a term not to exceed two years incarceration in the custody of the Commissioner of the Department of Corrections, said term to run consecutively to the disposition D.R. was serving at the Garden State Reception and Youth Correctional Facility at the time of his escape.

It should be noted that at the time of D.R.'s dispositional hearing, this court utilized the term "consecutive" solely as a means to distinguish the first disposition in time from the second, and later, disposition.

On May 19, 1994, the defense forwarded to this court a notice of motion for reconsideration pursuant to *R.* 4:49–2. Therein, the defense asserted that the court had erred by imposing the consecutive sentence on D.R., since the Code of Juvenile Justice allegedly does not permit the imposition of consecutive dispositions. The State was granted time to reply to the motion, but failed to do so. A hearing was set down for motion day on June 10, 1994. This court subsequently adjourned the hearing date to June 13, 1994 for the convenience of all parties. There was no opposition.

**Legal Argument:**

The defense argues that the Code of Juvenile Justice precludes the imposition of consecutive sentences. In support of this contention, the defense relies solely on the case of *In re J.L.A.*, 262 *N.J.Super.* 78, 619 *A.*2d 1321 (App.Div.1993).

In *J.L.A.*, after a bench trial, the juvenile was adjudicated delinquent and committed to Jamesburg for an indeterminate term not to exceed four years for acts which, if committed by an adult, would have constituted first degree robbery contrary to *N.J.S.A.* 2C:15–1. J.L.A. was simultaneously committed to a consecutive term not to exceed three years for acts which, if committed by an adult, would have constituted aggravated assault contrary to *N.J.S.A.* 2C:12–1b(1).

On appeal, J.L.A. contended, among other things, that the trial court had erred in imposing a consecutive sentence upon him since the Code of Juvenile Justice contained no provision authorizing such a disposition. In order to correctly construe the Code as it applied to J.L.A., the court acknowledged that its role was to give effect to the Legislature's intent. Recognizing that the Code failed to specifically mention the alternative of imposing consecutive sentences, the *J.L.A.* court looked to the legislative history of the Code for guidance as to the Legislature's intent.

This review failed to shed any light on the matter, since the rehabilitative theme of the Code was not dispositive as to the issue of consecutive sentences. Nevertheless, it was the language of the Code itself which the *J.L.A.* court ultimately found to be the key to the Legislature's intent. Finding that "the Legislature fully understood the concept of consecutive sentencing," the *J.L.A.* court decided that:

> by including [consecutive sentencing] in the Criminal Code but omitting it from the Juvenile Code, [the Legislature] intended consecutive dispositions not to be an available arrow in the juvenile judge's dispositional quiver.
>
> [*J.L.A., supra,* 262 *N.J.Super.* at 89, 619 *A.*2d 1321.]

By asking this court to reconsider D.R.'s sentence, the defense would have this court conclude that *J.L.A.* totally obviates the ability of a "juvenile" judge to impose a "consecutive" sentence. However, this court believes that *J.L.A.* should be and is both factually and legally distinguishable from the instant case; and, therefore, it respectfully declines to reach that conclusion.

Although the *J.L.A.* decision fails to explicitly state whether the juvenile committed the offenses charged in one or in multiple transactions, the statements of the *J.L.A.* court imply that only one transaction was involved. Indeed, that court rejected the state's argument that the Legislature intended to preserve consecutive treatment for offenses arising out of one transaction. That court found this theory to be unreasonable in that it would subject a juvenile who was convicted of several offenses arising out of a single event to greater punishment than one who had undertaken numerous criminal transactions.

This court wholeheartedly supports this position. In the instant case, however, D.R. committed two separate and distinct criminal transactions: a violation of probation on October 29, 1992, and a criminal escape on June 12, 1993. It is both just and reasonable that he receive a more significant disposition for these acts than if he had committed two offenses in a single event. After all, "there can be no free crimes." *State v. Yarbough*, 100 *N.J.* 627, 643, 498 *A.*2d 1239 (1985). If a sentencing court is not permitted to exercise its inherent power to make sentences run consecutively, juveniles such as D.R., who are currently serving a specified term for one offense, will have absolutely no deterrent to dissuade them from committing further offenses. Clearly, this could not have been the Legislature's intent. Nor does this court believe it to have been the *J.L.A.* court's intent.

The purposes of our Code of Juvenile Justice as set forth in *N.J.S.A.* 2A:4A-21 are: 1) to preserve the unity of the family whenever possible; 2) to separate juveniles from their family environment only when necessary for their health, safety or welfare or in the interests of public safety; and 3) for those children who are removed from their family units, to secure for them an adequate program of supervision, care and rehabilitation as nearly as possible equivalent to that which should have been provided by their parents. In short, in New Jersey, juvenile delinquency cases represent the "epitome of the relationship be-

tween the law and sociology." *State v. H.B.*, 259 *N.J.Super.* 603, 607, 614 *A.*2d 1081 (Ch.Div.1992).

To accomplish the above-delineated purposes, our case law has held that the Code should be liberally construed to promote the best interests and welfare of both the child and society. *State v. Tuddles*, 38 *N.J.* 565, 572, 186 *A.*2d 284 (1962). Indeed, in disposing of juvenile matters, a wide latitude of dispositional alternatives is entrusted to the juvenile court. *In re Doe*, 169 *N.J.Super.* 585, 589, 405 *A.*2d 448 (Camden County Ct.1979). Prior to *J.L.A., supra,* the tool of imposing consecutive sentences resided within this broad discretion. This court believes that such a tool should remain an available option to family court judges in dealing with youths who commit separate offenses while in custody for a prior adjudication.

■ At the time of D.R.'s dispositional hearing, this court had an extensive pre-dispositional investigation report before it, as well as a substantial file on the juvenile. This information showed that D.R. had been arrested on multiple occasions for various criminal actions, that he had admittedly used many different illicit drugs since the age of twelve and that he was in fact addicted to cocaine at one point. The report further reflected that D.R.'s father had died in 1989 being both drug and alcohol involved and that his mother had been unemployed since 1990 while trying to raise D.R., his brother and sister single-handedly. The report concluded that by reason of D.R.'s prior adjudications, the need for deterring D.R. and others from violating the law (especially the other residents of the facility), the complete lack of mitigating factors and the severity of the escape charge, D.R. should be given the maximum allowable sentence.

This court's imposition of a term of imprisonment for the escape charge, to run consecutively to D.R.'s prior disposition, reflects a full consideration of both the applicable purposes of the Code of Juvenile Justice, as well as the statements and conclusions set forth in the pre-dispositional investigation.

Although it is no longer legally possible to preserve the unity of D.R.'s family, the purposes of the Code are, nonetheless, served. The sentence promotes D.R.'s best interests by placing him in a highly structured environment with correctional treatment and rehabilitation for an extended and uninterrupted period of time. In addition, the conclusions of the pre-dispositional investigation are satisfied. This sentence deters D.R. and others like him by standing for the proposition that if one commits a separate offense while in custody for a prior disposition, there will be a separate disposition imposed. There are no free crimes. Juveniles within our State should not be permitted to believe that such things exist. Moreover, because of the severity of the escape charge as well as D.R.'s lengthy criminal history, the consecutive commitment also promotes the protection of society in general.

This court concludes, therefore, that in cases where a juvenile who is convicted of one offense and, while serving that disposition, commits a second offense, it is within the dispositional court's discretion to impose a disposition for that subsequent offense which runs consecutively to that juvenile's prior term. This conclusion not only serves the sense of justice and reason, it also promotes the best interests of the juvenile and the good of society in conformance with our Code of Juvenile Justice.

Perhaps, in the grand scheme of things, this court's efforts for D.R. will be futile. Nonetheless, for now, it is willing to make a final effort to rehabilitate this juvenile, before both his majority and his delinquent behavior thrust him inevitably and inextricably into the adult penal system.

Accordingly, the motion for reconsideration is denied.

The request for jail credit is also denied, since the time served subsequent to the escape will be credited to the term of his first disposition.

An oral motion for a stay of this decision pending appeal was made, opposed by the State and is denied.